UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER L. KNOX, as attorney-in-fact for<br>Margaret A. Knox under power of attorney,<br><br>Plaintiff,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br>VANGUARD FIDUCIARY TRUST COMPANY<br>VANGUARD MARKETING CORPORATION<br><br>Defendants. | Case No. |

# COMPLAINT

## Parties, Jurisdiction, and Venue

1. The Plaintiff, Peter L. Knox, Esq. ("Attorney Knox"), is the son of Margaret A. Knox and Kenneth L. Knox (collectively, the "Knoxes") and resides in Norfolk County, Massachusetts, having his usual and principal place of business in Norfolk County at 222 Walnut Street, Brookline, Massachusetts 02445.  Attorney Knox was admitted to practice law in Ohio in 1974 and in Massachusetts in 1976.

2. Margaret A. Knox, ("Mrs. Knox") is a 96 year old widow residing in Cincinnati, Ohio.

3. Mrs. Knox is the widow of Kenneth L. Knox.

4. At all relevant times, Attorney Knox has served as Mrs. Knox's agent under multiple Durable General Powers of Attorney ("DGPOA")' including DGPOAs dated May 7, 2009; January 31, 2001; July 30, 1992; and August 12, 1989, all of which were intended by Mrs. Knox to comply with both Ohio law and Massachusetts law.  All the DGPOAs comply with, and

1

are valid and effective under, Ohio and Massachusetts law.  Because the DGPOAs are valid in Ohio, where they were executed, they are also valid and effective under Pennsylvania law.  Copies of the DGPOAs are attached hereto as Exhibits 1, 2, 3, and 4, respectively.

5. This action is brought by Attorney Knox as attorney-in-fact for Mrs. Knox under the 2009 (and earlier) DGPOAs pursuant to Mass. Gen. Laws Chapter 190B, §5-506 which provides that "[t]he attorney in fact under a durable power of attorney is authorized to prosecute legal action for damages in behalf of the principal in the event of an unreasonable refusal of a third party to honor the authority of a valid durable power of attorney".

6. At all relevant times, Mrs. Knox, through Attorney Knox as her attorney-in-fact, has used the real estate at 222 Walnut Street, Brookline, Norfolk County, Massachusetts to store her financial, investing, and tax records and said address is the location where Mrs. Knox, acting through her attorney-in-fact, transacts her personal business.  Said address is also her address of record with the Defendants.

7. The Defendants, The Vanguard Group, Inc., Vanguard Fiduciary Trust Company, and Vanguard Marketing Corporation (collectively "Vanguard") are each Pennsylvania corporations with a principal place of business at 100 Vanguard Boulevard, Malvern, PA  19355-2331.  The Vanguard Group, Inc. owns Vanguard Fiduciary Trust Company, and Vanguard Marketing Corporation.

8. At all relevant times, Vanguard's communications with Mrs. Knox were directed to her at Attorney Knox's office at 222 Walnut Street, Brookline, Norfolk County, Massachusetts  02445.

9. Vanguard transacts business with and provides fiduciary, agency, investment, Individual Retirement Account ("IRA"), custodial account, and brokerage account services to its customers and shareholders in all fifty states, including Massachusetts.  However, Vanguard does not maintain a place of business within Massachusetts nor does Vanguard keep assets in Massachusetts.

10. The United States District Court has original jurisdiction over this case or controversy because it involves citizens of different states (Massachusetts and Pennsylvania) and the amount in controversy exceeds $75,000.

11. Massachusetts has personal jurisdiction over Vanguard because Vanguard transacts business in Massachusetts.

12. Venue in Massachusetts is proper because a substantial part of the events or omissions giving rise to the claim occurred in Massachusetts, including the signing of the IRA contract.

### Facts Relevant to All Counts

13. For many years prior to his death Kenneth L. Knox maintained an IRA with Vanguard (Vanguard IRA No. ********920)[1] that named Mrs. Knox as his sole death beneficiary. This IRA is hereafter identified as the "Kenneth L. Knox IRA".

14. On May 7, 2009, the Knoxes executed a new pair of Durable General Powers of Attorney (hereafter the "2009 DGPOAs") granting to their son, Attorney Knox, the broadest possible general agency authority to do for them in their names any and all things that they might do themselves if personally present.

15. The Knoxes were both nearly 90 years old when they executed the 2009 DGPOAs in furtherance of their decision to have their son, Attorney Knox, assume (as long planned for) the management and operation of their financial affairs. The 2009 DGPOAs were intended by the Knoxes to update (but not to replace) several older DGPOAs that had been prepared over the past 20+ years as part of the Knoxes' on-going estate planning efforts and in furtherance of their very strong desire to have no probate estate upon death. The 2009 DGPOAs updated, but did not replace, the earlier DGPOAs granted by the Knoxes to Attorney Knox in 1989, 1992, and 2001. All of these DGPOAs were signed in Ohio and all provide that they are durable and remain in

---

[1] Wherever an account number is used in this Complaint, all digits except the final three have been replaced with asterisks to maintain the privacy and security of the account.

full force and effect until such time as revoked in writing ("This durable power of attorney shall not be affected by my subsequent disability or incapacity" and "This power of attorney shall remain in full force and effect until such time as I, while not disabled or under incapacity, so designate in writing").  None have been revoked.  All were signed in the presence of each of the principals and of Attorney Knox and all were notarized by a notary who knew both of the Knoxes personally.

16. The 2009 DGPOAs provided full authority "To do and perform on my behalf and IN MY NAME and FOR MY ACCOUNT all and every act and thing WHICH I COULD OR MIGHT DO MYSELF IF PERSONALLY PRESENT [emphasis added], whether for myself, or as an agent, or as a trustee for others, or otherwise, including ..." numerous powers typically found in lawyer-drafted durable general powers of attorney.  The 2009 DGPOAs specifically authorized Attorney Knox to "Establish, modify, and terminate an account ... with a ... brokerage firm, or other financial institution selected by the attorney-in-fact"; "to sign checks, withdraw funds, and to open and close and manage bank, brokerage, mutual fund, and other financial accounts"; to "Contribute to, withdraw from, and deposit funds in any type of retirement plan, including, but not limited to, any ... individual retirement account ...;" to "Select and change payment options for the principal under any retirement plan;" and to "Exercise all investment powers available under any type of self-directed retirement plan."

17. The 2009 DGPOAs are valid under the laws of Massachusetts, *see* MGL c. 190B, Sec. 5-501, regardless of where they are executed; are valid under the laws of Ohio where they were executed and where they remain grandfathered under subsequent Ohio laws concerning DGPOAs, *see* Ohio Revised Code 1337.26; and are valid under the laws of Pennsylvania, which recognizes DGPOAs that are valid in the state in which executed, *see* 20 Pa.C.S. Sec. 5611.

18. Attorney Knox mailed the 2009 DGPOAs to Vanguard on Sept. 30, 2009.  In a phone call with Vanguard on Oct. 3, 2009, Vanguard confirmed to Attorney Knox that Vanguard had received the DGPOAs.

4

19. Kenneth L. Knox died on Sept. 30, 2012. Mrs. Knox, Kenneth L. Knox's surviving spouse, was the sole beneficiary of the Kenneth L. Knox IRA. The value of the funds held in the Kenneth L. Knox IRA as of Sept. 30, 2012, was approximately $44,896.

20. Upon the passing of Kenneth L. Knox, Mrs. Knox formed the intention to take possession of the funds of the Kenneth L. Knox IRA by transferring said funds to a new "inherited" IRA on an interim basis while she adapted to her bereavement and to thereafter take a lump sum distribution and then to transfer the distributed funds to one of her taxable (non-IRA) accounts on or before Dec. 31, 2012. Under the tax laws and the Knoxes' tax situation in 2012, a distribution in 2012 would have resulted in Mrs. Knox having virtually no tax liability upon receipt of the funds, whether from the Kenneth L. Knox IRA or from her inherited IRA, provided that the money was actually distributed to her from Vanguard by Dec. 31, 2012.

21. In October, 2012, Attorney Knox, acting pursuant to, and in furtherance of, Mrs. Knox's intentions, contacted Vanguard about submitting an application for an inherited IRA. Thereafter, Vanguard transmitted to Mrs. Knox, at her business and record address in Massachusetts, a Vanguard Inherited/Assumed IRA Kit for Spouse Beneficiaries ("IRA Application Kit"), which included a 12 page Vanguard IRA "Disclosure Statement", a 20 page Vanguard IRA "Custodial Account Agreement", and Vanguard's Inherited/Assumed IRA Form For Spouse Beneficiaries (the "Inherited IRA Application").

22. Acting under his authority as Mrs. Knox's attorney-in-fact pursuant to the 2009 DGPOA granted by Mrs. Knox (as well as under the earlier DGPOAs), Attorney Knox signed and affixed the name "Margaret A. Knox" to the Inherited IRA Application Form in order to bind both Mrs. Knox and Vanguard to the contract. Attorney Knox did not place his own initials after or under said signature nor did he otherwise indicate on the Inherited IRA Application that he had signed on behalf of Mrs. Knox under the power of attorney already on file with Vanguard. However, even without said explanatory information, the signature of Mrs. Knox as signed and affixed by Attorney Knox to the IRA Application Form constituted the lawful signature of Mrs.

5

Knox, to the same extent as if it had been made by her own hand. *See, e.g.* Mecham On Agency (Second Ed. §362) ("while common, it is not essential that an authorized agent shall add anything to the signature of his principal to show that it was made by an agent").

23. In signing her 2009 DGPOA and the earlier DGPOAs, Mrs. Knox gave Attorney Knox clearly stated actual, written authority to sign her name and to bind her, including to open and close and manage accounts and to do business with banks and brokers and financial institutions, and to take all actions relating to IRAs. Consequently, Attorney Knox had actual authority to sign Mrs. Knox's name to the IRA Application Form ('in my name ... to bind me ... ", as the 2009 DGPOA so plainly stated it).

24. On the IRA Application Form, Attorney Knox -- acting in furtherance of Mrs. Knox's intentions and desires -- designated Mrs. Knox's living children (including Attorney Knox) in equal shares as her IRA beneficiaries; designated Kenneth L. Knox's date of birth for Mrs. Knox's annual Required Minimum Distribution ("RMD") withdrawal rate; and enclosed an original death certificate of Kenneth L. Knox pursuant to the "Legal Requirements" that Vanguard demanded for opening a Vanguard inherited IRA.

25. Attorney Knox did not enclose with the Inherited IRA Application another copy of Mrs. Knox's 2009 DGPOA since Vanguard already had it on file and since the "Legal Requirements" set forth on page 2, Section 2, of the Inherited IRA Application Form did not require enclosing a copy of the power of attorney, nor did it even make any mention of powers of attorney.

26. Nothing in the Vanguard IRA Application Kit (which includes the IRA Application Form) contains any references to, or prohibitions against, an attorney-in-fact acting pursuant to a DGPOA (or pursuant to any other form of a power of attorney) from signing his principal's name to the IRA Application Form so as to bind both the principal and Vanguard.

27. Furthermore, the half page listing of "Legal Requirements" on page 2, Section 2, of the IRA Application Form that lays out with specificity all of the "Legal Requirements" for

opening the Vanguard IRA does not reference powers of attorney at all and does not contain any prohibition against an attorney-in-fact acting pursuant to a DGPOA (or pursuant to any other form of a power of attorney) from signing his principal's name to the IRA Application Form so as to bind both the principal and Vanguard.

28. On or about Oct. 30, 2012, Attorney Knox mailed the signed Inherited IRA Application Form to Vanguard from Mrs. Knox's Massachusetts address.

29. Vanguard received the completed and signed IRA Application Form on Nov. 2, 2012. Thereafter, Vanguard created in its records an inherited IRA titled "Margaret A. Knox BENEF Kenneth L. Knox" and bearing Vanguard account No. ********965 (hereafter the "Inherited IRA"). Said IRA was created pursuant to Vanguard's Custodial Account Agreement (the "Custodial Account Agreement").

30. On information and belief, the opening of the Inherited IRA was reviewed and approved in writing by a Vanguard supervisor.

31. On Nov. 5, 2012, Mrs. Knox, acting through her attorney-in-fact, instructed Vanguard via email under Attorney Knox's signature (in the form and format essentially dictated to Attorney Knox that day over the telephone by Vanguard, and accompanied by another copy of the 2009 DGPOA per Vanguard's telephone request) to make a full distribution to her of the Inherited IRA. In response to Mrs. Knox's written instructions, on Nov. 6, 2012, Vanguard issued its check No. 19198616, in the amount of $44,504.12, drawn from assets held in the Inherited IRA, payable to "MARGARET A. KNOX BENEF KENNETH L. KNOX" (hereafter the "$44,504.12 check") and mailed it to Mrs. Knox's Massachusetts record address, where it was received by Attorney Knox.

32. Later on Nov. 6, 2012, and without immediately informing either Mrs. Knox or Attorney Knox, Vanguard stopped payment on the $44,504.12 check.

33. Acting pursuant to Mrs. Knox's intentions and without knowledge that Vanguard had stopped payment and that Vanguard intended to dishonor its check, on Nov. 13, 2012,

Attorney Knox endorsed the $44,504.12 check on behalf of Mrs. Knox and mailed it to Fidelity Investments for deposit into an account maintained at Fidelity Investments by Mrs. Knox.

34. On Nov. 16, 2012, Patrick Michael Rogan, the Vanguard Registered Representative whom Vanguard had assigned to Mrs. Knox's account, wrote a letter to Mrs. Knox through her attorney-in-fact, Attorney Knox, stating that Vanguard had reversed the $44,504.12 distribution, stopped payment, and would dishonor the $44,504.12 check. A copy of said letter is attached hereto as Exhibit 5. Vanguard's purported reasons for reversing the distribution were that "the proper procedures weren't followed [at Vanguard] to process [Mrs. Knox's] distribution" and that Vanguard had not received a copy of the DGPOA by US mail, but had only received a copy transmitted by email. Although Attorney Knox had, in fact, mailed a copy of Mrs. Knox's 2009 DGPOA to Vanguard on Sept. 30, 2009, Ohio law specifically provides that electronic copies of powers of attorneys are as valid as originals, *see* Ohio Revised Code §1337.26(D) (stating that "... a photocopy or electronically transmitted copy of an original power of attorney has the same effect as the original").

35 On November 19, 2012, Fidelity returned the $44,504.12 check to Attorney Knox. uncashed.

36. In a letter dated Nov. 22, 2012, signed by Mrs. Knox personally and FedExed to Vanguard, Mrs. Knox demanded immediate payment of the funds held in the Inherited IRA. Vanguard did not comply with this demand.

37. Attorney Knox notified Vanguard's Executive Response Team in writing on Dec. 4, 2012 about Mrs. Knox's need to receive the Inherited IRA distribution in 2012, stating in part that the distribution"... needs to be received in the current tax year in order to avoid huge and expensive tax problems." Attorney Knox again notified Vanguard's Executive Response Team in writing on Dec. 13, 2012 of the impending Dec. 31, 2012 tax deadline and notified Vanguard again on Dec. 19, 2012 that "the tax consequences of your delaying the distribution beyond the end of 2012 are horrendous."

38.     Had the distribution demanded in writing by Mrs. Knox through Attorney Knox, and also demanded by her personally, been honored by Vanguard in 2012, said distribution would not have been subject to more than minimal Federal or Ohio income taxes because of the enormous end-of-life medical expenses that Kenneth L. Knox suffered in 2012 (which were fully deductible in 2012).  Distributions in any subsequent year would have been (and likely will continue to be) subject to substantial income taxes because the 2012 medical expenses cannot be used as a deduction against income received after 2012.

39.     The value of the Inherited IRA was $67,963.28 as of June 30, 2015 (see attached Exhibit 6) and was $69,801.96 on July 20, 2015.

40.     From November 6, 2012, when Vanguard stopped payment of and dishonored the just-issued distribution check, through the present, Vanguard has refused to distribute to Mrs. Knox any of the funds held in her Inherited IRA (despite multiple written demands directly and by her agent), including refusing to make the annual "required minimum distributions" ("RMDs") to Mrs. Knox under Federal law (Internal Revenue Code section 408(a)(6)) in 2012, 2013, 2014, and 2015 and under section 4.1(a) of the Vanguard Custodial Account Agreement ("notwithstanding any provision of this [Custodial Account] Agreement to the contrary, the distribution of the investor's [Mrs. Knox's] interest in the Account shall be made ... ").

41.     From November, 2012, to the present, Vanguard has also refused to honor and to effectuate Mrs. Knox's selection of her living children as the beneficiaries of her Inherited IRA and Vanguard has eliminated her children and replaced them with beneficiaries selected by Vanguard, thus changing her desired beneficiaries without her consent and against her instructions.

42.     Since November, 2012, Vanguard has stated several apparently pre-textual, unfair, deceptive, confusing, and confused "reasons" for dishonoring the check, refusing to obey Mrs. Knox's direct written instructions, refusing to honor her selection of her living children as her desired beneficiaries, refusing to pay out her IRA to her upon her written demands (both directly

and through her agent), refusing to pay her annual RMD (for which no written demand is needed, but for which multiple written demands have been made), and for refusing to honor and for failing to comply with the instructions given to Vanguard under the 2009 DGPOA (as well as under the earlier DGPOAs):

    a.    That its IRA application cannot be signed by an agent;

    b.    That Attorney Knox did not have "the ability to accept the terms and conditions of the inherited IRA account";

    c.    That its IRA application cannot be signed by an agent under an "external" power of attorney (i.e., one not on a Vanguard supplied power of attorney form and not containing special provisions to exculpate Vanguard from liability for any failure or refusal to obey instructions given by an agent), but can only be signed by the principal and that any use of external powers of attorney is fraudulent;

    d.    That its IRA application form can only be signed by an agent if done under a Pennsylvania special or limited power of attorney on an "internal" form supplied by Vanguard and containing special provisions to exculpate Vanguard from liability for any failure or refusal to obey instructions given by an agent.

    43.    During the course of this controversy Pennsylvania has specifically made it unlawful to demand an "internal" power of attorney from someone who has already presented for acceptance an "external" power of attorney: "A person may not require an additional or different form of power of attorney for authority granted in the power of attorney presented." *See* 20 Pa C. S. 5608.1(a)(3), effective 07/02/14, for powers of attorney presented by an agent for acceptance by a third party. Nonetheless, Vanguard continues to claim that it is not obligated to follow any instructions given by an agent under any "external" power of attorney.

    44.    Vanguard failed to disclose any of its power of attorney "requirements", "compliance policies" or "policy and procedures" to Mr. or Mrs. Knox or to Attorney Knox prior to the Knoxes entering into the IRA transactions described above. Had Defendants disclosed these policies to Mrs. Knox or to Attorney Knox prior to their submitting the Inherited IRA Application for Mrs. Knox to Vanguard, then Mrs. Knox would not have submitted the

application to Vanguard, but would have instead demanded, whether directly or through Attorney Knox as her attorney-in-fact, that Vanguard transfer the funds held in the Kenneth L. Knox IRA to another IRA custodian or to one of her taxable trust accounts.  Likewise, had Defendants disclosed these policies to Mr. or Mrs. Knox or to Attorney Knox prior to Kenneth L. Knox's death, Kenneth L. Knox would have demanded, whether directly or through Attorney Knox as his attorney-in-fact, that Vanguard transfer the funds held in the Kenneth L. Knox IRA to another IRA custodian or to one of his taxable trust accounts.

## Count I
## Breach Of Contract

45.   Plaintiff hereby repeats and re-alleges the facts stated in each of the foregoing paragraphs of this Complaint.

46.   On or about Nov. 2, 2012, Vanguard received the filled out Inherited IRA Application Form signed for Mrs. Knox by her attorney-in-fact and Vanguard set up the Inherited IRA and the Custodial Account Agreement with Mrs. Knox in their systems and moved the funds from the Kenneth L. Knox IRA to the Margaret A. Knox Inherited IRA pursuant to Mrs. Knox's written instructions as given to Vanguard by her attorney-in-fact.

47.   Defendant Vanguard breached its Custodial Account Agreement with Mrs. Knox by dishonoring the $44,504.12 check.

48.   Defendant Vanguard breached its Custodial Account Agreement with Mrs. Knox by refusing to comply with Mrs. Knox's demands and instructions, made directly and/or through her agent, for complete distribution of the funds held in the Inherited IRA.

49.   Defendant Vanguard breached its Custodial Account Agreement with Mrs. Knox by refusing her written demands and instructions, made directly and/or through her agent, to revoke and/or terminate the inherited IRA and to make complete distribution of the funds held in the Inherited IRA.

50. Defendant Vanguard breached its Custodial Account Agreement with Mrs. Knox by refusing to acknowledge and by refusing to effectuate her designation of beneficiaries, made directly and/or through her agent, for the Inherited IRA and by changing her beneficiaries without her consent and against her instructions.

51. Defendant Vanguard repeatedly breached its Custodial Account Agreement with Mrs. Knox when it annually failed and refused to pay out her annual Required Minimum Distributions from her inherited IRA in each of 2012, 2013, 2014, and 2015.

52. Defendant Vanguard breached its implied covenant of good faith and fair dealing.

53. As a result of Vanguard's breaches of contract, custodial, and agency duty, Mrs. Knox has suffered damages. These damages include the entirety of the value of the Inherited IRA ($69,801.96 as of July 20, 2015); plus $12,027 for the IRS's 50% non-deductible excise penalty tax for Vanguard's refusal to pay out the annual RMD in 2012, 2013, 2014, and 2015; plus IRS interest and penalties not yet assessed on the RMD refusal; plus the additional Federal and State tax liabilities which Mrs. Knox will incur when the Inherited IRA funds are paid to her ($37,592 – estimated for 2015 based on Mrs. Knox's actual 2014 income tax returns since 2015 cannot yet be done or known and using the July 20, 2015 value of the Inherited IRA); plus all the considerable costs and expenses of probate should she die if and while Vanguard's unauthorized designation of her otherwise non-existent "probate estate" is effective; plus triple damages and lawyers fees under the Consumer Fraud count and costs.

## Count II
## Negligence

54. Plaintiff hereby repeats and re-alleges the facts stated in each of the foregoing paragraphs of this Complaint.

55. As the custodian of Mrs. Knox's Inherited IRA, Vanguard owes a duty of reasonable care to Mrs. Knox in connection with said IRA.

56. In failing to honor, and by refusing to comply with, Mrs. Knox's directions to

Vanguard, whether given directly to Vanguard or through her agent, including but not limited to her directions to pay to her the amount held by Vanguard in the Inherited IRA; to make annual RMDs from the Inherited IRA; and to accept and to effectuate her designation of beneficiaries for the Inherited IRA, Vanguard breached its duty of reasonable care to Mrs. Knox.

57. As a result of Vanguard's breach of its duty to Mrs. Knox of reasonable care, Mrs. Knox has suffered damages.

## Count III
## Breach Of Fiduciary Duty

58. Plaintiff hereby repeats and re-alleges the facts stated in each of the foregoing paragraphs of this Complaint.

59. As a financial investment firm and as the custodian of Mrs. Knox's IRA, Vanguard owes agency and fiduciary duties to its customers concerning their accounts with Vanguard, and specifically, Vanguard owes agency and fiduciary duties to Mrs. Knox concerning the Kenneth L. Knox IRA and the Inherited IRA, including the duties to act with utmost good faith and fair dealing; intelligence; competence; skill; care; prudence and sound judgment; diligence; undivided loyalty; scrupulous honesty; the duty to obey instructions; the duty to act solely to advance the interests of Mrs. Knox; the duty to act solely for her exclusive benefit; and the duty to fully inform Mrs. Knox of all information that she might want or need.

60. In failing and refusing to honor Mrs. Knox's directions to Vanguard, whether given directly or through her agent, including, but not limited to, her directions to pay to her the amount held by Vanguard in the Inherited IRA; to make annual RMDs from the Inherited IRA; and to accept and effectuate her designation of beneficiaries for the Inherited IRA; to obey her instructions; and to fully inform Mrs. Knox of all information that she might want or need, Vanguard breached its fiduciary duties to Mrs. Knox.

61. By seizing dominion and control of, and interfering with Mrs. Knox's right to control and enjoy, her Inherited IRA and by depriving her of the use and possession of her

Inherited IRA without her consent and without lawful justification, Vanguard breached its fiduciary duties to Mrs. Knox.

62. As a result of Vanguard's breach of its agency and fiduciary duties to Mrs. Knox, Mrs. Knox has suffered damages.

## Count IV
## Declaratory Judgment

63. Plaintiff hereby repeats and re-alleges the facts stated in each of the foregoing paragraphs of this Complaint.

64. Based on the foregoing, actual controversies exist between the parties to this complaint concerning the matters set forth in this Complaint and a declaratory judgment is sought to remove, and to afford relief from, uncertainty and insecurity with respect to the rights, duties, and status (contractual, custodial, agency, fiduciary, and statutory, et. al.) of Mrs. Knox, Attorney Knox as Mrs. Knox's attorney-in-fact, and Vanguard as they relate to the DGPOAs, the instructions given to Vanguard, and to Vanguard's duties to Mrs. Knox and to Attorney Knox, and to Vanguard's breaches of those duties.

## Count V
## Consumer Fraud
## Pennsylvania Unfair Trade Practices And Consumer Protection Law, 73 P.S. Sec. 201
## Regulation Of Business Practices For Consumers Protection, M.G.L. Chapter 93A

65. Plaintiff hereby repeats and re-alleges the facts stated in each of the foregoing paragraphs of this Complaint.

66. At all relevant times, Vanguard has been engaged in trade or commerce within the meaning of 73 P.S. 201-2(3) and of Chapter 93A Sec. 1(b) of the Massachusetts General Laws.

67. Mrs. Knox, Attorney Knox, and each Defendant is a "person" within the meaning of 73 P.S. Sec. 201-2(2) and within the meaning of MGL Chapter 93A Sec. 1(a).

68. Mrs. Knox was not, and has not, engaged in trade or commerce within the

meaning of G.L. Chapter 93A Sec. 1(b).

69. Mrs. Knox sought Vanguard's services primarily for personal, family or household purposes within the meaning of 73 P.S. Sec 201-9.2(a).

70. In connection with the events giving rise to this action, Attorney Knox has not engaged in trade or commerce within the meaning of G.L. Chapter 93A Sec. 1(b).

71. Vanguard engaged in unfair and/or deceptive and/or unconscionable methods, acts, or practices that are unlawful within the meaning of 73 P.S. Sec. 201-3 and 73 P.S. Sec. 201-2(4)(XXI) ("Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding"), and also under G.L. c. 93A (which also prohibits the failure to disclosure any fact "the disclosure of which may have influenced ... prospective buyer not to enter into the transaction"), including:

   a. Vanguard's failure to disclose its policies and procedures concerning whether or not Vanguard would honor and comply with instructions given by an attorney-in-fact pursuant to a lawful power of attorney (durable, general, or otherwise) to Mr. and Mrs. Knox and to Attorney Knox prior to Kenneth L. Knox's death and prior to Mrs. Knox taking any actions regarding her widow's distribution from the Kenneth L. Knox IRA or setting up and funding her own Inherited IRA at Vanguard.

   b. Vanguard's dishonoring of the $44,504.12 check;

   c. Vanguard's making unauthorized trades in the IRA;

   d. Vanguard's failure and refusal to follow Mrs. Knox's instructions concerning the designation of beneficiaries for the Inherited IRA and distributions to be made there from.

   e. Vanguard's failure and refusal to follow Mrs. Knox's instructions by refusing her written demands to revoke and/or terminate the inherited IRA and to make complete distribution of the funds held in the Inherited IRA.

   f. Vanguard's failure and refusal to follow Mrs. Knox's instructions to pay her annual Required Minimum Distributions in 2012, 2013, 2014, and 2015.

   g. Vanguard's failure and refusal to distribute to Mrs. Knox the annual Required

15

        Minimum Distributions in 2012, 2013, 2014, and 2015 without need for any demand, per section 4.1(a) of the Vanguard Custodial Account Agreement which requires the RMD to be distributed "notwithstanding any provision of this [Custodial Account] Agreement to the contrary".

    h.    Vanguard's seizing dominion and control of, and interfering with Mrs. Knox's right to control and enjoy, her Inherited IRA and depriving her of the use and possession of her Inherited IRA without her consent and without lawful justification.

    i.    Vanguard's breaches of its fiduciary and agency duties of utmost good faith and fair dealing.

72.    As a result of Vanguard's actions and inactions as described above, Mrs. Knox has suffered damages.

WHEREFORE, Peter L. Knox, Esq., as attorney-in-fact for Margaret A. Knox under powers of attorney, requests that this Honorable Court issue a judgment:

A.    Declaring that Vanguard is required to honor and to comply with all instructions provided to it by Mrs. Knox acting through Attorney Knox as her attorney-in-fact, to the same extent as if Mrs. Knox had provided the instructions personally, including but not limited to instructions concerning the identities of the beneficiaries of the Inherited IRA, and to distribute the funds held in the Inherited IRA in whole or part;

B.    For damages, treble damages, attorneys' fees, pre and post judgment interest, and costs in connection with this action; and

C.    For such other and further relief as this Court deems just and proper.

### Demand For Jury Trial

Plaintiff Peter L. Knox, in his capacity as attorney-in-fact for Margaret A. Knox pursuant to powers of attorney, hereby demands a trial by jury as to all issues so triable.

                                        PETER L. KNOX, in his capacity as attorney-in-fact for Margaret A. Knox, under powers of attorney,
                                        By his attorney,

                                        <u>/s/ Michael J. Markoff</u>
                                        Michael J. Markoff, BBO #547590
                                        P.O. Box 212
                                        Falmouth, MA  02540
                                        (508) 548-5500

September 21, 2015