**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ‎ ) | |
| **PETER L. KNOX, as attorney-in-fact for** ) | |
| **Margaret A. Knox under power of attorney,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **15-13411-FDS** |
| ) | |
| **THE VANGUARD GROUP, INC.;** ) | |
| **VANGUARD FIDUCIARY TRUST** ) | |
| **COMPANY; and VANGUARD MARKETING** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This is an action for breach of contract.  Plaintiff Peter Knox, acting as attorney-in-fact

for his mother, Margaret A. Knox, alleges that defendants The Vanguard Group, Inc.; Vanguard

Fiduciary Trust Company; and Vanguard Marketing Corporation improperly refused to comply

with his instructions concerning an inherited individual retirement account held in his mother's

name.

Vanguard has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  For the

following reasons, the motion will be denied in part and granted in part.

**I.   Background**

**A.   Factual Background**

Plaintiff Peter Knox is the son of Margaret Knox and her late husband Kenneth Knox.

(Compl. ¶¶ 1, 3).  At all times relevant to the complaint, Peter has served as agent for Kenneth and Margaret under various durable general powers of attorney.  (*Id.* ¶ 4).  Margaret is 96 years old and resides in Cincinnati, Ohio; however, she maintains a business address "of record" in Brookline, Massachusetts, where, "acting through her attorney-in-fact, [she] transacts her personal business."  (*Id.* ¶¶ 2, 6).

Defendants The Vanguard Group, Inc.; Vanguard Fiduciary Trust Co.; and Vanguard Marketing Corporation (collectively, "Vanguard") "transact[] business with and provide[] fiduciary, agent, investment, individual retirement account, custodial account, and brokerage account services . . . ."  (*Id.* ¶ 9).  The complaint alleges that Kenneth maintained an individual retirement account with Vanguard for "many years prior to his death," and that Kenneth named his wife, Margaret, as his sole death beneficiary of the account.  (*Id.* ¶ 13).

On May 7, 2009, Kenneth and Margaret executed a new set of durable general powers of attorney ("DGPOAs") granting Peter "the broadest possible general agency authority including to do for them in their names any and all things that they might do themselves if personally present."  (*Id.* ¶ 14).  Among other things, the 2009 DGPOAs specifically granted Peter the power "to deal in any way with retirement plan and the like; to do business with . . . financial institutions," and "to sign checks, withdraw funds, and to open and close and manage bank, brokerage, mutual fund, and other financial accounts."  (Compl. Ex. 1).

Peter mailed the 2009 DGPOAs to Vanguard on September 30, 2009.  (Compl. ¶ 18).  Vanguard confirmed, in a telephone call on October 3, that it received the 2009 DGPOAs.  (*Id.*).

Kenneth died on September 30, 2012.  At that time, the value of the funds held in his IRA at Vanguard was $44,896.  (*Id.* ¶ 19).  In October 2012, Peter contacted Vanguard to inquire about submitting an application for an inherited individual retirement account for Margaret, the

sole beneficiary of Kenneth's IRA.  (*Id.* ¶ 21).[1]  Vanguard then sent a "Vanguard

Inherited/Assumed IRA Kit for Spouse Beneficiaries" to Margaret at her business address in

Massachusetts.  (*Id.* ¶ 21).  That kit included "a 12 page Vanguard IRA 'Disclosure Statement', a

20 page Vanguard IRA 'Custodial Account Agreement', and Vanguard's Inherited/Assumed

IRA Form For Spouse Beneficiaries."  (*Id.*).  The complaint refers to this package of documents

as the "Inherited IRA Application."

Acting as Margaret's attorney-in-fact, Peter completed the application and signed the

name "Margaret A. Knox" to the application form.  (*Id.* ¶ 22).[2]  Peter "designated Mrs. Knox's

living children (including [Peter]) in equal shares as her IRA beneficiaries; designated Kenneth

L. Knox's date of birth for Mrs. Knox's annual Required Minimum Distribution ("RMD")

withdrawal rate; and enclosed an original death certificate" in accordance with the "Legal

Requirements" listed in the application.  (*Id.* ¶ 24).  The complaint states that the "Legal

Requirements" section of the application did not require him to enclose a copy of the 2009

DGPOA or otherwise contain a prohibition against an applicant acting as an attorney-in-fact.

(*Id.* ¶¶ 25-27).  Peter mailed the completed application to Vanguard on October 30, 2012.  (*Id.*

¶ 28).

Vanguard received the application on November 2, 2012, and opened an inherited IRA in

the name of "Margaret A. Knox BENEF Kenneth L. Knox."  (*Id.* ¶ 29).  The complaint alleges

that the inherited IRA was created pursuant to Vanguard's Custodial Account Agreement.  (*Id.*).[3]

---

[1] An "inherited" individual retirement account is "[a]n individual retirement account that is left to a beneficiary after the owner's death."  Investopedia.com, http://www.investopedia.com/terms/i/inherited _ira.asp (last visited April 20, 2016).

[2] The complaint acknowledges that Peter did not indicate in any way that he had signed on behalf of Margaret as her attorney-in-fact under the 2009 DGPOA.  (Id. ¶ 22).

[3] That agreement was not attached to the complaint.

On November 5, 2012, Peter "instructed Vanguard via e-mail under [Peter's] signature . . . to make a full distribution to [Margaret] of the inherited IRA." (*Id.* ¶ 31).  At Vanguard's request, Peter included a copy of the 2009 DGPOA as an attachment to the e-mail. (*Id.*).  In response, on November 6, 2012, Vanguard issued a check in the amount of $44,504.12 payable to "Margaret A. Knox BENEF Kenneth L. Knox," which Peter received at Margaret's address of record in Massachusetts.  (*Id.*).  Peter then endorsed and deposited the check.  (*Id.* ¶ 33).

After sending the check, however, Vanguard stopped payment without informing either Peter or Margaret.  (*Id.* ¶ 32).  On November 16, 2012, Patrick Rogan, a Vanguard representative, notified Peter by letter that Vanguard had reversed the distribution and stopped payment on the check because "the proper procedures weren't followed to process your mother's distribution."  (*Id.* ¶ 34; Ex. 5 at 1).  Specifically, the letter stated that because Peter had signed the IRA application form for Margaret's inherited IRA, Vanguard "must receive a new form signed by Ms. Margaret Knox before any distributions or transfers out of Vanguard can occur." (Compl. Ex. 5 at 1).[4]  In response, Margaret "personally" signed a letter to Vanguard demanding payment of the funds held in the IRA.  (Compl. ¶ 36).  When Vanguard continued to refuse, Peter wrote to Vanguard in December 2012, to inform them that the distribution "needs to be received in the current tax year in order to avoid huge and expensive tax problems."  (*Id.* ¶ 37).

The complaint alleges that Vanguard "refused to distribute to Mrs. Knox any of the funds held in her Inherited IRA . . . including refusing to make the annual 'required minimum distributions'" as required by federal tax law.  (*Id.* ¶ 40).  It further alleges that Vanguard "also

---

[4] According to the complaint, Vanguard contended that it had received a copy of the DGPOA by e-mail, and that such a copy was insufficient.  (*Id.* ¶ 34).  The complaint alleges that electronic copies of powers of attorney are valid under Ohio law.  (*Id.*).

refused to honor and to effectuate Mrs. Knox's selection of her living children as the

beneficiaries of her Inherited IRA and Vanguard has eliminated her children and replaced them

with beneficiaries selected by Vanguard . . . ." (*Id.* ¶ 41). And it alleges that Vanguard has

"stated several apparently pretextual, unfair, deceptive, confusing, and confused 'reasons' for

dishonoring the check, refusing to obey Mrs. Knox's direct written instructions, refusing to

honor her selection of her living children as her desired beneficiaries, refusing to pay out her

IRA to her upon her written demands (both directly and through her agent), refusing to pay her

annual [required minimum distributions] (for which no written demand is needed, but for which

multiple written demands have been made), and for refusing to honor and for failing to comply

with the instructions given to Vanguard under the 2009 DGPOA (as well as under the earlier

DGPOAs." (*Id.* ¶ 42). Specifically, it alleges that Vanguard gave the following "reasons" for its

actions:

a.      That its IRA application cannot be signed by an agent;

b.      That Attorney Knox did not have 'the ability to accept the terms and conditions of the inherited IRA account';

c.      That its IRA application cannot be signed by an agent under an 'external' power of attorney (i.e., one not on a Vanguard supplied power of attorney form and not containing special provisions to exculpate Vanguard from liability for any failure or refusal to obey instructions given by an agent), but can only be signed by the principal and that any use of external powers of attorney is fraudulent;

d.      That its IRA application form can only be signed by an agent if done under a Pennsylvania special or limited power of attorney on an 'internal' form supplied by Vanguard and containing special provisions to exculpate Vanguard from liability for any failure or refusal to obey instructions given by an agent.

(*Id.*).

The complaint alleges that "Vanguard failed to disclose any of its power of attorney

'requirements', 'compliance policies' or 'policy and procedures' to Mr. or Mrs. Knox or to

[Peter] prior to the Knoxes entering into the IRA transactions described above." (*Id.* ¶ 44). The complaint further alleges that had Vanguard disclosed its requirements, "Mrs. Knox would not have submitted the application to Vanguard," but would have made other arrangements for the disbursement of funds. (*Id.*).

### B.     Procedural Background

On September 22, 2015, plaintiff Peter Knox, acting as attorney-in-fact for Margaret Knox, filed a five-count complaint against defendants The Vanguard Group, Inc.; Vanguard Fiduciary Trust Company; and Vanguard Marketing Corporation. The complaint brings claims for breach of express contract and breach of the implied covenant of good faith and fair dealing (Count One); negligence (Count Two); breach of fiduciary duty (Count Three); declaratory judgment (Count Four); and consumer fraud in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201, and Mass. Gen. Laws ch. 93A (Count Five).

On January 14, 2016, the Vanguard defendants moved to dismiss all counts under Fed. R. Civ. P. 12(b)(6).

## II.     Standard of Review

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the complaint fails to set

forth "factual allegations, either direct or inferential, respecting each material element necessary

to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301,

305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1,

6 (1st Cir. 2005)).

## III.    Analysis

### A.    Breach of Contract

Count One of the complaint asserts a claim for breach of contract based on the custodial

account agreement included in the inherited IRA application sent to Peter by Vanguard.  Count

One asserts a claim for breach of the express terms of that agreement, as well as a claim for

breach of the implied covenant of good faith and fair dealing.  The parties appear to agree that if

there is an agreement, it is governed by Pennsylvania law.

#### 1.    Breach of Express Terms of the Agreement

"A plaintiff asserting a breach of contract claim under Pennsylvania law must establish

three elements:  '(1) the existence of a contract, including its essential terms, (2) a breach of a

duty imposed by the contract[,] and (3) resultant damages.'" *Sampathachar v. Federal Kemper

Life Assur. Co.*, 186 F. App'x 227, 230 (3d Cir. 2006) (citing *Ware v. Rodale Press, Inc.*, 322

F.3d 218, 225 (3d Cir. 2003) (citation and internal quotation marks omitted)).  Vanguard raises

two grounds for dismissal of the breach of contract claim:  first, that the complaint fails to

identify the essential terms of the agreement, and second, that there was no breach, because the

Custodial Account Agreement gave it the contractual right to refuse to follow Peter's instructions

and insist that its own requirements be met first.

Vanguard contends that the complaint is deficient as to the essential terms of the

agreement because it neither includes the agreement as an attachment nor cites the specific

provisions that plaintiff alleges it breached. As an initial matter, there is no requirement that a

written contract be attached to the complaint in order to plead a claim for breach of contract.

Although that would be a sensible method of identifying a contract's "essential terms," it

certainly is not the only such method. The complaint specifically cites to Section 4.1(a) of the

CAA in support of its allegations that Vanguard breached the agreement by refusing to make

annual required minimum distributions to Margaret. (*See* Compl. ¶ 40). The complaint does not

cite any other specific provisions of the contract. However, on a motion to dismiss, the Court

must "give . . . plaintiff the benefit of all reasonable inferences" that can be drawn from the well-

pleaded facts. *Ruiz*, 496 F.3d at 5 (citing *Rogan*, 175 F.3d at 77). Here, the essential terms at

issue can be identified inferentially. For example, from the complaint's allegation that Vanguard

"refused to distribute to Mrs. Knox any of the funds held in her Inherited IRA," *see* Compl. ¶ 40,

it can reasonably be inferred that plaintiff alleges that the contract required Vanguard to make

such distributions. It can also be inferred that plaintiff alleges that the contract gave Margaret

the right to designate the beneficiaries of her account. *See* Compl. ¶ 41 (alleging that Vanguard

"refused to honor and to effectuate Mrs. Knox's selection of . . . beneficiaries . . . ."). Thus, the

complaint adequately identifies the essential terms of the contract it alleges Vanguard breached.

While the form of allegation is hardly ideal, it is sufficient under the circumstances.

Vanguard's defense that the terms of the Custodial Account Agreement allowed it to act

as it did is premature. In support of that contention, Vanguard has submitted two versions of its

Custodial Account Agreement. On a motion to dismiss, the court may properly take into account

certain types of documents outside the complaint without converting the motion into one for

summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official

public records; (3) documents that are central to plaintiff's claim; and (4) documents that are

sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  As

the alleged contract at issue, the CAA is certainly central to plaintiff's claim.  However, the CAA

submitted by Vanguard does not contain any identifying information, such as a name, signature,

or account number, and it appears that it is merely a copy of a standard CAA in existence in

2007.  In its reply brief, Vanguard simply states the 2007 CAA "was in place in 2012 . . . ."

Defs. Rep. at 4.  That may be the case, but the Court cannot resolve the issue based on a

statement in a reply brief, without more.  Among other things, plaintiff has not had an

opportunity to weigh in on its authenticity as a copy of the CAA he was sent in 2012.

Accordingly, the Court will not consider the 2007 version of the CAA at this time.[5]  Vanguard's

contention that the CAA gave it the authority to act as is alleged is therefore premature.

Defendants' motion to dismiss will be denied with respect to the claim for breach of the express

terms of the agreement.

### 2.      Breach of the Implied Covenant of Good Faith and Fair Dealing

The complaint also alleges, although not in a separate count, that Vanguard's conduct

breached the implied covenant of good faith and fair dealing.  "Every contract in Pennsylvania

includes an implied covenant of good faith and fair dealing."  *Mack Trucks Inc. v. BorgWarner*

*Turbo Sys., Inc.*, 508 F. App'x 180, 185-86 (3d Cir. 2012) (citing *Benchmark Gr., Inc. v. Penn*

*Tank Lines, Inc.*, 612 F. Supp. 2d 562, 583 (E.D. Pa. 2009)).  Under Pennsylvania law, a plaintiff

may not bring a claim for breach of the implied covenant based on conduct that would also

---

[5] Vanguard first attached a copy of a 2014 CAA to its memorandum in support of its motion; as Knox points out, that version of the CAA was not in existence at the relevant time.

constitute a breach of the contract's express terms. *See USX Corp. v. Prime Leasing Inc.*, 988

F.2d 433, 438 (3d Cir. 1993) ("one can invoke 'implied' terms only when there are no express

terms in the contract relating to the particular issue.").

The basis of the breach-of-implied-covenant claim is far from clear. It appears that

plaintiff is alleging that if the Custodial Account Agreement did not expressly require Vanguard

to do certain things (for example, honoring the DGPOA) or forbid it from doing others (for

example, stopping payment on the check), its conduct nonetheless breached the implied covenant

by denying plaintiff the benefits of the contract. Under the circumstances, and as an alternative

theory of recovery, that is sufficiently plausible to survive a motion to dismiss as an alternative

theory of liability.

## IV.     Negligence (Count Two) and Breach of Fiduciary Duty (Count Three)

Vanguard next contends that the claims for negligence (Count Two) and breach of

fiduciary duty (Count Three) must be dismissed under Pennsylvania's "gist of the action" and

"economic loss" doctrines. In applying the "gist of the action" doctrine, Pennsylvania courts

examine the facts of a claim to determine whether the source of the duty alleged to have been

breached sounds in contract or tort law. *See generally Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa.

2014). Similarly, "[t]he economic loss doctrine prohibits plaintiffs from recovering in tort

economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford*

*Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (internal quotations omitted). "The two

doctrines . . . are closely related." *Graham Packaging Co., L.P. v. Transplace Texas, L.P.*, 2015

WL 8012970, at *2 (M.D. Pa. Dec. 7, 2015). Where, as is the case here, the case under

consideration is not a products liability case, the gist of the action doctrine "is a better fit . . . ."

*Id.*; *accord Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001).

Under the gist of the action doctrine, "[i]f 'the duty breached is one created by the parties *by the terms of the contract*—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract,' then the claim should be treated as one for breach of contract." *New York Cent. Mut. Ins. Co. v. Edelstein*, 2016 WL 374164, at *2 (3d Cir. Feb. 1, 2016) (quoting *Bruno*, 106 A.3d at 68) (emphasis added). "If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.*

Whether Vanguard's duties were created by the terms of the contract depends, of course, on the existence of a valid contract between the parties. It is not clear whether the existence of an enforceable contract remains an issue in the case. Although Vanguard has not denied that a contract was formed, it has not conceded that point either. As plaintiff notes, Vanguard representative Peter Rogan appeared to imply in his November 2012 letter that Vanguard did not consider Peter's signature on the inherited IRA application sufficient for Margaret to "accept the terms and conditions of the inherited IRA account." *See* Compl. Ex. 5.

"Notwithstanding the efficacy of the doctrine, a court should be slow to dismiss claims under the gist of the action doctrine. Federal civil procedure allows parties to plead multiple claims as alternative theories of liability." *Orthovita, Inc. v. Erbe*, 2008 WL 423446, at *4 (E.D. Pa. Feb. 14, 2008). Plaintiff contends that the negligence count (Count Two) is pleaded in the alternative in the event that the Custodial Account Agreement does not constitute an enforceable contract between parties. Because some ambiguity remains as to whether a contract was in fact formed between the parties, the Court will deny defendants' motion to dismiss Counts Two and Three under the gist of the action or economic-loss doctrines without prejudice to the renewal of

those arguments at a later stage.

## V.       Consumer Fraud (Count Five)

Count Five of the complaint asserts claims for consumer fraud under both Pennsylvania

and Massachusetts consumer protection statutes.

### A.       Mass. Gen. Laws ch. 93A

Mass. Gen. Laws ch. 93A, § 2(a) prohibits "unfair or deceptive acts or practices in the

conduct of any trade or commerce."  A practice or act is unfair under Chapter 93A "if it is (1)

within the penumbra of a common law, statutory, or other established concept of unfairness; (2)

immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors

or other business people."  *Heller Fin. v. Insurance Co. of N. Am.*, 410 Mass. 400, 408 (1991).

Plaintiff contends that Vanguard's refusal to accept the validity of the general power of

attorney, its related conduct, and its stated reasons for its actions, together satisfy the

"unfairness" requirement of chapter 93A.  Under the specific facts as alleged in the complaint,

that is sufficiently plausible to survive a motion to dismiss.  Accordingly, defendants' motion to

dismiss Knox's claim under Mass. Gen. Laws ch. 93A will be denied.

### B.       Unfair Trade Practices and Consumer Protection Law

"Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-

1 *et seq.*, 'is designed to protect the public from fraud and deceptive business practices.'"

*Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 497 (3d Cir. 2013) (quoting *Gardner v. State*

*Farm Fire & Cas. Co.*, 544 F.3d 553, 564 (3d Cir. 2008)).  The complaint asserts that Vanguard

violated the UTPCPL's "catch-all" provision, 73 Pa. Stat. § 201-2(4)(xxi), which "provides a

private right of action against a person '[e]ngaging in any other fraudulent or deceptive conduct

which creates a likelihood of confusion or of misunderstanding.'"  *Belmont*, 708 F.3d at 498

(quoting *Gardner*, 544 F.3d at 564).  "To establish liability under the UTPCPL's catchall

provision a plaintiff must present evidence showing:  (1) a deceptive act that is likely to deceive

a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that

the plaintiff's justifiable reliance caused ascertainable loss."  *Slapikas v. First Am. Title Ins. Co.*,

298 F.R.D. 285, 292 (W.D. Pa. 2014).

Again, the specific allegations of the complaint adequately allege conduct that could be

considered deceptive and create a likelihood of confusion or misunderstanding in violation of the

UTPCPL.  Accordingly, defendants' motion to dismiss Knox's claim under the Pennsylvania

Unfair Trade Practices and Consumer Protection Law will be denied.

## VI.     Declaratory Relief (Count Four)

Count Four of the complaint asserts a claim for "Declaratory Judgment."  The parties

agree that this claim has been at least partially mooted by Vanguard's post-complaint distribution

of the funds in the inherited IRA.  In addition, it appears that the "rights, duties, and status" that

Knox asks the Court to determine track the issues presented in his other claims, and will

necessarily be resolved in the course of litigating those claims.  The Court also notes that

plaintiff did not oppose defendants' motion to dismiss Count Four in his brief in opposition.  For

these reasons, Count Four will therefore be dismissed.

## VII.    Conclusion

Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Specifically,

1.      Defendants' motion to dismiss Count One is DENIED;

2.      Defendants' motion to dismiss Counts Two and Three is DENIED without

        prejudice;

3.      Defendants' motion to dismiss Count Four is GRANTED; and

4.      Defendants' motion to dismiss Count Five is DENIED.

**So Ordered.**


                                             /s/  F. Dennis Saylor
                                             F. Dennis Saylor IV
Dated:  May 2, 2016                          United States District Judge